UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

RICHARD M.,

    Plaintiff,

v.

NANCY A. BERRYHILL,
**Deputy Commissioner for Operations performing the duties and functions not reserved to the Commissioner of Social Security,**

    Defendant.

Case No. 18-2048

REPORT AND RECOMMENDATION

Plaintiff Richard M. seeks review under 405(g) of the Social Security Administration's denial of his application for disability insurance benefits. The parties filed cross motions for summary judgment. For the reasons explained below, the Court recommends that Plaintiff's Motion for Summary Judgment **(#11)** be **GRANTED**, Defendant's Motion for Summary Judgment **(#15)** be **DENIED**, and that this case be remanded under Section 405(g).

**I.  Background**

On March 25, 2015, Plaintiff filed an application for disability insurance benefits and supplemental security income, alleging disability beginning January 14, 2014. Plaintiff's claim was denied initially on August 6, 2015, and on reconsideration on October 2, 2015. Plaintiff, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge (ALJ) on December 7, 2016. During the hearing, the ALJ heard testimony from an impartial vocational expert (VE). The ALJ issued a decision on May 3, 2017, finding Plaintiff not disabled. (R. 15-25.)

The ALJ found that Plaintiff has the severe impairment of lumbar degenerative disc disease. (R. 17.) The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526). Additionally, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except:

> he can occasionally climb ramps, stairs, ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and should never be exposed to hazardous machinery or unprotected heights.

(R. 18.) The ALJ found that Plaintiff was capable for performing his past relevant work as a field representative. (R. 57-58.) The Appeals Council denied Plaintiff's Request for Review, making the ALJ's ruling the Commissioner's final decision.

## II. Standard of Review

The court reviews a decision denying benefits to determine only whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's decision. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walker v. Berryhill*, 900 F.3d 479, 482 (7th Cir. 2018) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). When reviewing the administrative record, the Court does not "reweigh the evidence or substitute [its] judgment for that of the ALJ." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018).

Stated differently, if reasonable minds could differ as to whether Plaintiff is disabled, the Court must uphold the ALJ's decision to deny benefits. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). Importantly, "the ALJ must 'build a logical bridge from the evidence to her conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence.'" *Id.* (*quoting Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

## III. Analysis

Plaintiff argues that the ALJ: (1) erred in weighing medical opinion evidence; (2) erred in assessing Plaintiff's RFC; and (3) erred in evaluating Plaintiff's subjective allegations of pain. The Court will address each argument in turn.

### a. Medical Opinion Evidence

Plaintiff first argues that the ALJ erred in weighing the medical opinion evidence. Plaintiff primarily takes issue with the ALJ assigning "little weight" to the opinion of Plaintiff's treating pain specialist, Dr. Jido.

An ALJ must give controlling weight to a treating physician's opinion if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Because a treating physician has "greater familiarity with the claimant's condition and circumstances," an ALJ may only discount a treating physician's opinion based on good reasons "supported by substantial evidence in the record." *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Those reasons must be "supported by substantial evidence in the record; a contrary opinion of a non-examining source does not, by itself, suffice." *Campbell*, 627 F.3d at 306.

"Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, [he] has to decide what weight to give that opinion." *Campbell*, 627 F.3d at 308. To do this, the ALJ considers a variety of factors, including: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) whether the physician was a specialist in the relevant area; and (6) other factors that validate or contradict the opinion. *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014); 20 C.F.R. § 404.1527(c)(2)-(6).

However, the ALJ need only "minimally articulate" his reasons for rejecting the physician's opinion. *Filus v. Astrue*, 694 F.3d 863, 869 (7th Cir. 2012). Even if the ALJ's rejection of the physician's opinions is "somewhat cursory" due to lack of specificity, the Court will still uphold the decision if the ALJ minimally articulates the reasoning. *See Id.* (finding that the ALJ minimally articulated his reasoning by stating a physician's findings were "overall normal" and that the physician concluded that the claimant could

"continuously push, pull, crouch, and crawl," as well as noting another physician's normal test results).

Dr. Jido opined that Plaintiff could only sit for five minutes at one time, stand for five minutes at one time, sit for a total of less than two hours in an eight-hour workday, stand and walk for a total of less than two hours in an eight-hour work day, and required an option that permitted him to alternate between sitting, standing, and walking at will. (R. 411). Dr. Jido further opined that every 20 minutes, Plaintiff would need to walk for a total of ten minutes, would need to take hour long unexpected breaks throughout the day, need to elevate his legs for 90 percent of the workday, and required a cane to walk. (R. 412). Finally, Dr. Jido opined that Plaintiff could occasionally lift and carry less than ten pounds, could never twist, stoop, crouch, squat, or climb ladders, would be off task for up to 20 percent of the work day, and would miss work more than four days a month. (R. 412-413).

As noted, the ALJ gave "little weight" to Dr. Jido's opinion. Plaintiff first argues that the ALJ is "required" to expressly address every factor outlined in 20 C.F.R. § 404.1527(c)(2)-(6). As at least one other court has noted, "[t]he Seventh Circuit has not clearly opined on whether an ALJ must explicitly list the factors." *Chappuis v. Berryhill*, 2017 U.S. Dist. LEXIS 167319, * 26 (S.D. Ill. October 10, 2017).

The Seventh Circuit has remanded a case where "[t]he ALJ's decision indicate[d] that she considered opinion evidence in accordance with [the regulations]," but did not "explicitly address the checklist of factors as applied to the medical opinion evidence." *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). However, the Seventh Circuit has also stated that "while the ALJ did not explicitly weigh each factor in discussing [the treating physician's] opinion, his decision makes clear that he was aware of and considered many of the factors." *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013); *See also Elder v. Astrue*, 529 F.3d 408 (7th Cir. 2008) (ALJ not in error when he addressed only two of the six factors); *Henke v. Astrue*, 498 F. App'x 636, 640 n.3 (7th Cir. 2012) (stating "[t]he ALJ did not explicitly weigh every factor while discussing her decision to reject [the treating source's] reports, but she did note the lack of medical evidence supporting [the] opinion . . . and its inconsistency with the rest of the record.").

This Court agrees with the Southern District of Illinois that "[d]espite the ambiguity, the regulations state the ALJ will 'consider' the factors, but do not impose a duty to elaborate on each one, 20 C.F.R. § 404.1527, and the Seventh Circuit has not definitively held otherwise." *Chappuis*, 2017 U.S. Dist. LEXIS at *27.

Here, the ALJ noted that Dr. Jido was Plaintiff's pain specialist (factors one and five). (R. 23). The ALJ spent multiple pages detailing medical evidence, including evidence from other physicians, that the ALJ believed contradicted Dr. Jido's opinion (factors three and four). (R. 20-24). The ALJ further noted what he construed as internal inconsistencies in Dr. Jido's opinion, along with opinions by the State agency consultants that were less restrictive than Dr. Jido's opinion (factor 6). (R. 23-24). "In sum, the ALJ's opinion establishes he was aware of and considered the factors in the regulations." *Chappuis*, 2017 U.S. Dist. LEXIS at *28.

Although the ALJ does not have to expressly consider every factor set out in Section 404.1527, the ALJ does have to supply good reasons "supported by substantial evidence in the record" for rejecting Dr. Jido's opinion. *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). Here, the ALJ has failed to show good reason for rejecting Dr. Jido's findings and determining that his opinion was not consistent with other evidence in the record.

The Commissioner argues that the ALJ pointed to a July 30, 2014, Functional Capacity Evaluation ("FCE") where the evaluator noted that Plaintiff self-terminated the process without attempting to carry out several activities. (R. 20; R. 341-342). Plaintiff, however, testified that the reason he could not complete the evaluation was that he was in so much pain he could not adequately perform the tasks that were required. (R. 50). The Seventh Circuit has stated that an ALJ may not discredit a claimant's testimony about pain and limitations solely because there is no objective medical evidence to support it. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). While it was not improper for the ALJ to consider that Plaintiff did not complete the FCE, the Commissioner (and the ALJ) make no mention of why Plaintiff failed to complete the examination. At a minimum, the ALJ is required to at least consider the reason why Plaintiff was unable to complete the FCE. Additionally, as

5

discussed in more detail below, Plaintiff's inability to perform certain walking activities during the FCE was documented by other physicians. *See* (R. 418).

The Commissioner further points to the ALJ citing to examinations from July 23, 2014, and September 15, 2014, that noted improvement in bending and "showed little objective findings." These examinations actually state that Plaintiff "remains very tender in the back" and shows only "slight" improvement in bending. (R. 385-R.388). The ALJ does not adequately explain how these findings are inconsistent with Dr. Jido's findings.

The Commissioner notes a July 18, 2015, consultative examination with Dr. Norbert De Biase. The ALJ noted that Plaintiff ambulated 50 feet without support and pain as evidence that Dr. Jido's opinion was inconsistent with the opinions of other physicians. Dr. Jido, however, opined that Plaintiff could walk one-half of a city block before he experienced pain. (R. 411). The ALJ fails to show how Plaintiff's ability to walk 50 feet without pain during an examination is inconsistent with Dr. Jido's statement that Plaintiff can walk one-half of a city block without pain. If anything, Dr. De Biase's examination is *consistent* with Dr. Jido's findings.

Additionally, Dr. De Biase noted that Plaintiff had to change positions several times during the examination. (R. 417). This is consistent with Dr. Jido's opinion that Plaintiff can only sit and stand in five-minute increments and will need to shift positions at will. (R.411). Dr. De Biase found that Plaintiff had difficulty getting on and off the examination table (R. 418), which is consistent with Dr. Jido's opinion that Plaintiff experiences difficulty with bending and extending. (R. 411). Dr. De Biase also wrote that Plaintiff deferred to perform the toe walk because he could not complete it, he performed the heel walk with moderate difficulty, and he performed the tandem walk with severe difficulty. (R. 418). Additionally, Plaintiff could not squat and had a positive straight leg raise. *Id.* This is consistent with Plaintiff's reasoning for terminating his participation in the FCE (R. 50) and is consistent with the standing and walking limitations set forth by Dr. Jido. (R. 411-R. 412).

The ALJ and the Commissioner next point to an August 18, 2015, pre-surgical clearance report. The ALJ stated that this report shows that Plaintiff acknowledged pain improvement with treatment and "reported productive goal-oriented activities." (R. 21).

6

Plaintiff did note "some" improvement with treatments, but also noted varying pain scores and good and bad days in relation to his pain. (R. 464). Although the note does say that Plaintiff was able to "describe" productive, goal-oriented activities, the note does not say that Plaintiff was engaging in these activities. (R. 464). It is difficult to see how Plaintiff's ability to describe activities is evidence that Dr. Jido's opinion merits little weight.

On September 17, 2015, during a neurological consultation, Plaintiff reported severe back pain despite physical therapy and multiple injections. (R. 431). It was also reported that Plaintiff was taking Percocet and his pain was still at a level of 6-8/10 and was worse with activity. *Id.* The note states that Plaintiff cannot walk more than one block without stopping to sit, cannot stand more than 10 minutes, and leans on a cart "consistent with neurogenic claudication." *Id.* This examination is not mentioned in the ALJ's written decision. While the ALJ does not have to mention every piece of evidence, *Denton v. Astrue*, 596 F.3d 697, 700 (7th Cir. 2004), the ALJ also cannot ignore evidence contrary to his ruling. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). This is particularly true when that evidence supports Dr. Jido's limitations.

The ALJ cites a December 10, 2015, note that states Percocet allows Plaintiff to stay "active and functional." (R. 475-R. 476). While the note does indicate that Plaintiff was able to function while on Percocet, the note further indicates that Plaintiff was in constant pain, engaging in a more sedentary lifestyle, had limited range of motion, had pain with flexion, had pain with prolonged sitting, and required frequent position changes. *Id.* Further, it was noted that pain interferes with Plaintiff's activities of daily living, his life, and his sleep, and that Plaintiff cannot do many things that he once did. *Id.* These findings are also consistent with Dr. Jido's opinion.

Furthermore, Plaintiff's relief from Percocet appeared to be short lived. On May 10, 2016, it was reported that Plaintiff's pain medications were not very effective. (R. 489). By July 26, 2016, Plaintiff had stopped taking opioids all together because they were not helping, and the side effects were too severe. (R. 493). Again, while the ALJ is not required to mention every piece of evidence, he cannot ignore pieces of evidence that support a finding of disability. *Golembiewski*, 322 F.3d at 917.

The ALJ cited to an August 17, 2016, report where Plaintiff noted that Tylenol #3 "helped a little bit" and where Plaintiff stated that he sometimes did not take any medications. (R. 498). The ALJ does not articulate how receiving "a little bit" of relief from Tylenol #3 and sometimes not taking medications is inconsistent with Dr. Jido's findings, particularly when Plaintiff has consistently reported little to no relief from medications. (R. 48-R. 49; 493).

The ALJ next points to an October 13, 2016, neurosurgery follow-up. The ALJ cited to normal muscle strength findings, as well as normal reflexes and coordination. (R. 21). It was also noted at this time that Plaintiff's gait and station were abnormal. (R. 606). While the ALJ did mention this, (R. 21), this is further support for Dr. Jido's standing and walking limitations, as well as Dr. Jido's prescription for a cane. It was also noted that Plaintiff "shuffles in pain" at this appointment, showing support for Plaintiff's walking difficulty, and bolstering Plaintiff's claim that he was unable to complete the activities in the FCE. (R. 606).

The ALJ cited to a December 23, 2016, clinic follow-up visit where Plaintiff "denied any numbness or tingling." (R. 21). It is unclear from the ALJ's analysis how numbness or tingling relates to Dr. Jido's findings or Plaintiff's symptoms in general. Rather, it appears that the ALJ merely cited to a normal finding that is unrelated to Plaintiff's impairments, instead of building an accurate and logical bridge between this finding and the ALJ's conclusion that Dr. Jido's opinion is not supported. *Clifford*, 227 F.3d at 872. Additionally, the ALJ noted that Plaintiff was not taking opioid pain medications at this time, (R.21), but Plaintiff had already stated in May 2016 that he stopped taking opioids because they were not helping, and the side effects were too severe. (R. 493).

The ALJ also stated that Plaintiff told Dr. Gaynor that he leans over a cart to walk, but an examination revealed normal gait, stance, and balance. (R. 21). However, it was further noted at this appointment that Plaintiff "continues to have significant back and leg pain." (R. 631). The ALJ notes this, but then states that Dr. Gaynor pointed out that Plaintiff's MRI does not explain or justify his symptoms. (R. 21; R. 631). Dr. Gaynor also noted, however, that there may be a "neuropathic component" to Plaintiff's pain, and that this

8

could explain why the MRI did not explain his symptoms. *Id.* This is consistent with the September 17, 2015, neurological consultation where it was noted that Plaintiff leans on a cart consistent with "neurogenic claudication." (R. 431). Put another way, although Dr. Gaynor did state that the MRI did not explain Plaintiff's symptoms, the ALJ failed to address that Dr. Gaynor provided another possible explanation for the symptoms.

The ALJ also found Dr. Jido's opinion "internally inconsistent" because Dr. Jido opined that Plaintiff was capable of "low stress work." (R. 21; R. 412). This finding, however, is misleading. Case law and the Social Security regulations speak to "stress" in relation to mental impairments. *See Clifford v. Apfel*, 227 F.3d 863, n. 2 (7th Cir. 2000) ("the use of the term 'low stress' is somewhat of a misnomer because stress lies in the individual not in the job"); *see also* SSR 85-15 (discussing "low stress" jobs in term of mental impairments); *Johansen v. Barnhart*, 314 F.3d 283, 288 (7th Cir. 2002) (stating that because the plaintiff was not limited in multiple areas of mental functioning, he retained the mental RFC to perform low-stress work); *Durrett v. Apfel*, 2000 U.S. Dist. LEXIS 7388, *21 (S.D. Ind. 2000) (discussing "low stress work" in terms mental illness). Considering Dr. Jido's assessment deals with Plaintiff's physical impairments, it logically follows that Dr. Jido's opinion that Plaintiff was capable of "low stress work" is intended to mean that Plaintiff does not suffer from any stress-related mental impairments. The ALJ did not show how this is an internal inconsistency, particularly where Dr. Jido's opinions are supported in other parts of the record.

In short, although the ALJ's consideration of the factors set out in Section 404.1527 was not error, the ALJ failed to give good reasons for not giving controlling weight to Dr. Jido's opinion. *Campbell*, 627 F.3d at 308. The ALJ's finding that Dr. Jido's opinion is entitled to "little weight" because it is "internally inconsistent" and "inconsistent with other evidence of record" is not supported by the medical evidence. On remand, the ALJ is directed to reconsider the consistency of Dr. Jido's opinion with the medical evidence of record.

### b. The ALJ's RFC Determination

Plaintiff argues that the ALJ failed to adequately support his RFC determination with medical evidence from the record. Primarily, Plaintiff argues that the ALJ failed to adequately account for Dr. Jido's opinion that Plaintiff would need to use a cane to ambulate.

The ALJ must determine an individual's RFC, or "what an individual can still do despite his or her limitations," SSR 96–8p, based upon medical evidence as well as "other evidence, such as testimony by the claimant or his friends and family." *Murphy v. Colvin*, 759 F.3d 811, 818 (7th Cir. 2014) (*quoting Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008)). The RFC must contain an assessment of all functional restrictions that a claimant's medically determinable impairments produce. SSR 96-8p.

"An ALJ must articulate in a rational manner the reasons for his assessment of a claimant's residual functional capacity, and in reviewing that determination a court must confine itself to the reasons supplied by the ALJ." *Getch v. Astue*, 539 F.3d 473, 481-482 (7th Cir. 2008). However, "an ALJ need not mention every piece of evidence." *Denton v. Astrue*, 596 F.3d 697, 700 (7th Cir. 2004). Rather, the ALJ is only required to "minimally articulate his or her justification for rejecting or accepting specific evidence of disability." *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988).

On July 15, 2015, Dr. Jido opined that Plaintiff required the use of a cane for life. (R. 610). The ALJ discounted this opinion because, three days later on July 18, 2015, Dr. De Biase stated that there was no indication that Plaintiff took a cane with him to the examination and Plaintiff was able to ambulate unassisted. (R. 23).

As the Court noted above, during the July 18, 2015, examination with Dr. De Biase, Plaintiff was only asked to ambulate 50 feet, which is consistent with Dr. Jido's findings that Plaintiff can ambulate for about one-half a block. On remand, the ALJ should consider whether Plaintiff's RFC should include the use of a cane, in light of the Court's findings that the ALJ must reconsider the weight given to Dr. Jido's opinion.

Plaintiff also argues that the ALJ failed to consider that Plaintiff needed to frequently travel to perform his past relevant work. The ALJ found that Plaintiff was capable of

performing his past relevant work as a field representative. (R. 24). According to the VE, the job of field representative requires travel (R. 82), and Plaintiff argues that his inability to travel prevents him from performing his past relevant work. Plaintiff bases this argument on his inability to sit or stand for extended periods of time, as opined by Dr. Jido. The ALJ, on remand, should consider whether Plaintiff is able to perform his past relevant work when reassessing the sitting and standing limitations prescribed by Dr. Jido.

### c. The ALJ's Subjective Symptom Analysis

Next, Plaintiff argues that the ALJ erred in evaluating Plaintiff's subjective allegations that addressed his pain and symptoms.

Under SSR 16-3p, the ALJ "consider[s] all of an individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the record." SSR 16-3p. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms." *Id.*

An ALJ may not discount a claimant's testimony solely because it is not substantiated by objective medical evidence. 20 C.F.R. § 404.1529(c)(2); SSR 16-3p; *Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015). However, an ALJ may consider the lack of objective evidence in conjunction with other factors, such as the claimant's activity levels and the treatment she received to alleviate the pain or other symptoms. 20 C.F.R. § 404.1529(c)(2)-(4); *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009).

Moreover, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* However, "[t]his court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Skarbek v. Barnhart*, 390 F. 3d 500, 504-05 (7th Cir. 2004). The Court will affirm the ALJ's credibility finding so long as the ALJ "gives specific reasons that are supported by the record." *Id.* at 505.

The majority of the ALJ's subjective symptom analysis is premised on a rejection of Dr. Jido's opinion, as well as the lack of objective medical evidence to support Plaintiff's allegations. For example, the ALJ, in finding that Plaintiff's allegations were not as severe as alleged, noted that since 2015, Plaintiff "has generally ambulated effectively and unassisted with normal gait and station." (R. 22). However, as noted above, there are multiple records that state the contrary. *See* (R. 50, R. 418, R. 431, R. 475-476, R. 606).

The ALJ noted that Plaintiff stopped opioid pain medication on his own. (R. 22). Plaintiff expressly stated that this is because the medication did not provide relief and caused him to have numerous side effects. (R. 493).

The ALJ also pointed out that Plaintiff did not take a cane prescribed by Dr. Jido to his examination with Dr. De Biase. (R. 23). For the reasons already discussed, the ALJ should reevaluate this opinion on remand.

In short, the ALJ has failed to build an accurate and logical bridge between his evaluation of the medical evidence and his conclusions. On remand, upon reconsideration of Dr. Jido's opinion and the objective medical evidence, the ALJ should further reevaluate whether the medical evidence supports Plaintiff's subjective pain and symptom allegations.

**IV.    Conclusion**

For these reasons, the Court recommends that Plaintiff's Motion for Summary Judgment (#11) be GRANTED, Defendant's Motion for Summary Judgment (#15) be DENIED, and that this case be remanded under Section 405(g). The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation.  See 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 5th day of August, 2019.

s/ERIC I. LONG  
UNITED STATES MAGISTRATE JUDGE
